### HALE *vs.* BOARDMAN and others.

Q., being the owner of certain grain, at W., and being indebted to the plaintiff and others, on the 14th of September, 1854, entered into an arrangement with the defendants, by which the latter agreed to make some advances for Q., transport the grain to Albany, sell it there, reimburse themselves out of the proceeds, and pay over the residue to the plaintiff as a creditor of Q. The plaintiff was not a party to the arrangement, nor cognizant of it until some time afterwards. The defendants sold the grain and appropriated the proceeds pursuant to the arrangement, except that they failed to pay the residue to the plaintiff. *Held* that the defendants' promise to Q. for the benefit of the plaintiff, was obligatory upon them, and authorized a suit in the name of the plaintiff, to recover so much of the money as was to be paid over to him; without any assignment of the cause of action, from Q. to him.

*Held also*, that in such action, Q. was a competent witness for the plaintiff, independent of the statute allowing the assignor of a demand to be a witness for the assignee.

To entitle a defendant to the privilege of being examined as a witness in his own behalf, on the ground that the assignor of the demand sued on has been examined against him, the assignment must be one that passes the cause of action—an effective assignment, without which the suit would have to be brought in the name of the assignor.

THIS was an appeal to the general term, from the judgment entered in this cause pursuant to the decision of Justice GOULD, who tried the same at the Albany circuit without a jury. One Quimby, being the owner of certain grain at Weedsport, and being indebted to the plaintiff and others, and finding some difficulty in getting possession of his grain and procuring its transportation to Albany by the canal, on the 14th of September, 1854, entered into an arrangement with the defendants, by which they undertook to make some advances on his behalf, transport the grain to Albany, sell it there, reimburse themselves out of the proceeds, and, as the plaintiff claims, pay over the residue to him as a creditor of Quimby, and, as the defendants claim, pay over such residue into the Cayuga County Bank upon a debt there owing by Quimby. This controverted question of fact, in regard to which there was much conflicting evidence, was decided by the judge in favor of the plaintiff. The plaintiff was not a party to the

arrangement, nor cognizant of it until some time afterwards. The defendants sold the grain, and appropriated the proceeds, pursuant to the arrangement, except that instead of paying the plaintiff, they paid the net residue into the Cayuga County Bank upon other demands owing by Quimby; claiming that such was the understanding. On the 26th of September, 1854, Quimby assigned this demand to the plaintiff, and the latter brought suit thereon in his own name, counting in part upon the assignment. The fact of the assignment was proved in the case, but the instrument of assignment was not introduced in evidence; the plaintiff not deeming it essential to his case, and the judge excluding it as evidence, when offered by the defendants. Quimby having been sworn as a witness on the part of the plaintiff, one of the defendants offered himself as a witness in behalf of the defendants, and was excluded, on the objection of the plaintiff. The trial took place before the recent amendment of the code allowing parties to be sworn as witnesses in their own behalf. The court below having found the facts as above stated, decided in favor of the plaintiff, and judgment was rendered against the defendants for $2502.46. Exceptions were duly taken to the exclusion of the above evidence and to the decision of the court, and the defendants appealed.

*J. R. Cox,* for the defendants.

*J. K. Porter,* for the plaintiff.

*By the Court,* HOGEBOOM, J. Upon the finding of the judge who tried this cause, which was well warranted by the evidence, it must be assumed that Quimby, who was indebted to the plaintiff, to Bliss, and to the men in his own employ, delivered the grain in question, of which he was owner, to the defendants, upon their engagement to pay Bliss, to pay the employees, and out of the proceeds of the grain to pay the plaintiff. So far as Bliss and the boatmen were concerned,

he performed his engagement. He had to do so in order to get possession of the grain, and procure its transportation to Albany, the place where it was to be sold. So far as the plaintiff was concerned, he did not do so, and his refusal was placed upon the ground that his engagement was to pay the proceeds of the grain, after reimbursing himself, into the Cayuga County Bank, upon a debt there owing by Quimby. This version of the contract, however, is negatived by the finding of the court below, and must be rejected as incorrect. The question then is, can the plaintiff, who was not a party to, nor cognizant of the contract made between Quimby and the defendants, at the time, avail himself of it afterwards, and institute a suit in his own name to recover so much of the money as was to be paid over to him?

In *Van Epps* v. *McGill*, (*Lalor's Sup. to Hill & Denio*, 209,) it was held that a mere verbal agreement between the plaintiff, the defendant and a third person, that a debt owing by the latter to the plaintiff, should be paid by the defendant to the plaintiff on account of a debt of a similar amount owing by the defendant to such third person, was a mere *nudum pactum*, and not obligatory upon the parties, unless some new consideration was introduced into the transaction; and that the antecedent indebtedness not being extinguished or in any way affected by the new arrangement, did not furnish sufficient aliment for its support.

In *Blunt* v. *Boyd*, (3 *Barb*. 209,) it was also held, against the dissenting opinion of Mr. Justice Harris, that a pre-existing debt, owing by the defendant to one Rowley, was not a sufficient consideration for a promise, made by the defendant, to pay Rowley's indebtedness of a similar amount to the plaintiff; that some new element must enter into the transfer of the indebtedness, in order to give it vitality; but that it would have been sufficient, if, at the time, the defendant had actually paid to Rowley the amount of the debt owing by him to Rowley, and the latter had immediately re-delivered money to the defendant, upon his engagement to pay

it to the plaintiff in satisfaction of the latter's debt against Rowley. Judge Harris held it unnecessary to go through such a form, and that the continuance of the original liability was not an obstacle to the validity of the transaction.

In *Barker* v. *Bucklin*, (2 *Denio*, 45,) it was held that a *purchase*, by the defendant, of a span of horses, from a third person, and a promise by the defendant, in consideration thereof, to pay the whole or a part of the purchase money to the plaintiff, in consideration that the plaintiff would forbear to prosecute such third person upon a debt owing by him, until such purchase money became due, was a valid transaction, and legally bound the defendant to the performance of his engagement to the plaintiff, and enabled the latter to institute a suit thereon in his own name.

In *Farley* v. *Cleveland*, (4 *Cowen*, 432,) although the case was decided at a previous date, the court went a step further, and held that independent of the question of forbearance, and of the continuance of the original indebtedness, a promise by the defendant to pay to the plaintiff the amount which the defendant owed to a third person on a purchase then made, in satisfaction of a debt of like amount previously owing by such third person to the plaintiff, was a valid promise, and would support an action in the plaintiff's own name. It was put upon the ground that it was not a promise to pay the debt of another, and so void by the statute of frauds, if by parol ; but that it was a promise to pay the defendant's own debt, in a particular way, satisfactory to his creditor.

In *Delaware and Hudson Canal Co.* v. *The Westchester Co. Bank*, (4 *Denio*, 97,) which arose upon demurrer, the court went still further, and held, in general terms, that as a general rule, where one party promises another to pay to him the former's debt to a third person, in satisfaction of the debt of such third person to the plaintiff, the promise is binding, and enables the promisee to maintain a suit thereon in his own name. This doctrine is, I think, rather too broadly stated, and is subject to some qualifications.

The rule announced in the last case is broad enough to cover the case at bar, and indeed the case of *Farley* v. *Cleveland*, above referred to, is nearly parallel to the present, differing from it in only two particulars, and those not, I think, of controlling importance. In the case in 4*th Cowen* the transaction grew out of an actual *purchase* by the defendant from a third person, who owed the plaintiff. Here there was not an actual *purchase* by the defendants from Quimby, in the strict sense of the term, but rather a *bailment* of property by Quimby to the defendant, and an *advance* of money by the defendants to Quimby, or to his creditors at his request, in consideration or by means of which and his concurrent promise to pay the plaintiff, the defendants obtained possession of the grain. I think it was well held, by the judge who tried the cause, that this was a sufficient consideration for the defendant's promise, if it was otherwise unobjectionable. The other particular in which the present case differs from *Farley* v. *Cleveland*, and from most of the other cases above cited, is that the plaintiff was not a party to the arrangement, nor originally cognizant of it. But I do not think this is a controlling circumstance, if, as in this case, the plaintiff afterwards assented to it, before bringing suit. Indeed bringing suit upon it would be an election on his part to adopt the transaction. Several of the cases hold that it is not essential to the legal validity of the transaction, that the plaintiff's debt against the third person should be at the time extinguished. It doubtless is so when he receives payment from the defendant, and perhaps when he elects to pursue his remedy against him. The controlling consideration seems to be, was there at the time some new transaction—some new element entering into the relations of the parties—something more than mere words, which could operate as a consideration for the defendant's engagement. If so, the transaction was a valid one. Such element is found in the present case, and I am therefore prepared to hold, upon the principle of the adjudged cases, that this is a case where the defendants' en-

Hale *v.* Boardman.

gagement was obligatory upon them, and authorized a suit in the name of the plaintiff, without an assignment of the cause of action from Quimby to him.

If the foregoing views are correct, it was not essential to the maintenance of this action that Quimby should have assigned the cause of action to the plaintiff. He was examined as a witness, and properly so, independent of the assignment, altogether. He was neither a party to the suit, nor the party for whose immediate benefit it was prosecuted. Nor was he examined as assignor, but was just as competent a witness, as to every fact to which he testified, without as with the assignment. The fact that he had made an assignment of the demand, seems to have been given in evidence, although the written assignment itself was excluded. It is supposed that this entitled the defendant to be examined as a witness in his own behalf; especially if the written assignment was erroneously excluded. But I do not see that this is so. Had the assignment even been introduced in evidence, as it was offered to be on the part of the defendant, it would not have helped the defendant's counsel towards examining his client. This trial was before the late amendment allowing parties to be sworn in their own behalf, and the only ground on which the defendant could ask to be sworn, was that the assignor had been sworn against him. But I think, to entitle him to that privilege, the assignment must be one that passes the cause of action—an effective assignment, without which the suit would have to be brought in the name of the assignor. A third person not interested in the cause of action, might have undertaken to assign it, and might have executed a formal instrument to that effect; and such third person might have been called as a witness by the plaintiff. If he was so, I do not consider that the defendant would be thereby entitled to examine himself. And the reason is, that although such third person was the *nominal*, he was not the *real* assignor. He did not in fact, any more than Quimby did in this case, assign the real cause of action. In a certain

sense, Quimby and Boardman were the contracting parties, but with reference to the present cause of action, Quimby .in fact represented the plaintiff, and the antagonist parties were the plaintiff and defendant. In such a case, I apprehend, the defendant would not come in as a witness, any more than if any other *agent* of the plaintiff had been examined. So far, therefore, as the right to examine Boardman is concerned, I do not think the defendant would be in any better situation, even if the assignment had been introduced in evidence, and that on the part of the plaintiff. It would have been an act of supererogation, and though it was averred in the complaint as an existing fact, an excess of matter would not vitiate the complaint, or impose the duty of supplying by proof a fact unnecessarily averred in pleading.

The defendant, however, contends that he was entitled to evidence of the written paper, for the purpose of shaking or impeaching the evidence of Quimby ; and although it is not perceived that, properly explained, it would have that effect to any material extent, yet perhaps it would be proper evidence for the consideration of the jury, as bearing upon the credibility of Quimby, and as tending to show that a demand which by his testimony was shown to be vested in the plaintiff, on the 14th of September, was disposed of by assignment by him as owner thereof, on the 26th of September, were it not for the circumstance that the fact of assignment, and the date of the assignment, appear to have been in the case already. I had some doubt, on my first examination of the case, whether these facts were really proved, and whether the plaintiff's objections, which were sustained by the court, did not go to the entire exclusion of any evidence on that subject ; but on a closer inspection of the case, I think they were limited to the contents of the instrument. It is not to be presumed that the contents of the paper (which are not shown) would have disclosed any material fact bearing on Quimby's credibility, beyond what had thus already sufficiently appeared in the oral evidence ; and the defendants had there-

fore the benefit of the very facts which the written instrument would have exposed.

On the whole, I cannot see that any error was committed, and am therefore of opinion that the judgment of the court below should be affirmed.

[ALBANY GENERAL TERM, May 3, 1858. *Wright, Gould* and *Hogeboom,* Justices.]