Commonwealth vs. Anthony, a slave.

CASE 9—INDICTMENT—FEBRUARY 22.

# Commonwealth vs. Anthony, a slave.

### APPEAL FROM M'LEAN CIRCUIT COURT.

1. A slave may be indicted and tried in the circuit court for the offense of being accessory before the fact to the crime of administering poison, with the intention to destroy life, committed by a slave. Both may be united in the same indictment.

2. In such case the punishment of the accessory is that prescribed by the 6th section of article 7, chapter 93, Revised Statutes, and only extends to the infliction of stripes not exceeding one hundred.

3. None of the provisions of the chapter on crimes and punishments of the Revised Statutes, in which slaves are not named, apply to the punishment of slaves, nor change any rule of law in relation to their punishment.

4. An erroneous judgment for the defendant, sustaining a demurrer to an indictment upon the ground that it contains a misjoinder of offenses, does not operate as a bar to a future prosecution, and may be reversed by the court of appeals. *Quære.* Is an erroneous judgment for the defendant on a demurrer to an indictment such a judgment as will, in any case, preclude a reversal?

A. J. JAMES, Attorney General, for Commonwealth, cited *Rev. Stat.*, 639, *sec.* 3 ; *Ib.*, 247, *sec.* 26 ; *Ib.*, 244, *sec.* 10.

CICERO MAXWELL, on same side, cited *Rev. Stat.*, *chap.* 93, *art.* 7, *sec.* 3 ; 1 *Bishop's Crim. Law*, *sec.* 85, *p.* 81 ; *Ib.*, *chap.* 21, *sec.* 455 ; 4 *Blackstone*, 228, *side page*, *Chitty's ed.; Ib.*, *chap.* 3.

YEAMAN, for appellee, cited *Rev. Stat.*, *chap.* 28, *art.* 1, *secs.* 10, 26 ; *Ib.*, *chap.* 28, *art.* 3, *sec.* 4 ; *Ib.*, *chap.* 93, *art.* 7, *secs.* 1, 2, 3, 4 ; *Ib.*, 190, *secs.* 16, 17 ; *Crim. Code*, *sec.* 125.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT :

An indictment was found against Isaac, a slave, charging him with the offense of administering a deadly poison, called corrosive sublimate, to Isaac Robison, and his wife and child, with the intention to destroy their lives.

In the same indictment, Anthony, a slave, was charged with the offense of being accessory before the fact to the crime thus committed by Isaac, by having previously incited, procured, counseled, and commanded him to do it.

A demurrer to the indictment was filed in the court below on behalf of Anthony, which was sustained, and from that judgment the Commonwealth has appealed.

Commonwealth vs. Anthony, a slave.

The question raised by the demurrer, and to be decided by this court, is, does the offense of being accessory before the fact, when committed by a slave, to the crime of administering poison with the intention to destroy life, amount to a felony which may be punished in the circuit court, or is it only a misdemeanor for which the accused must be proceeded against before a justice of the peace?

The 3d section of the 7th article in the 93d chapter in the Revised Statutes (*page* 639) reads as follows:

"If any free negro or slave shall administer to any person poison, or other destructive thing, with the intention to destroy life, upon conviction he shall suffer death."

The statute does not prescribe the punishment which shall be inflicted on an accessory before the fact to such a crime. But the sixth section of the same article provides, that if a free negro or slave consult about the murder, or advise the murder of any person, he shall, on conviction in the circuit court, be punished by any number of stripes not exceeding one hundred.

The offense with which the slave Anthony is charged in the indictment, necessarily embraces the offense mentioned in said sixth section. If he procured, counseled, and commanded the slave Isaac to administer the poison, he was certainly guilty of consulting about and advising the murder of the persons to whom the poison was to be administered. And, as upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged in the indictment, and may be found guilty of any offense included in that charged in the indictment, (*Criminal Code, sec.* 258,) it follows, that if by law Anthony is not liable to any greater degree of punishment than that denounced by the statute for advising the murder of any person, still, as that offense is included in the one with which he is charged in the indictment, he might have been proceeded against under the indictment for its commission. For this reason, therefore, the court erred in sustaining the demurrer.

But does not the law inflict a greater degree of punishment upon a slave who is guilty of the crime for which Anthony was indicted, than that imposed by the statute merely for *advising*

the commission of a murder—an offense which might be perpetrated, although no attempt was made to commit the murder?

It is a general rule of the common law that accessories before the fact shall suffer the same punishment as their principals; if the one be liable to death, the other is also liable. (*Blackstone's Com., vol.* 4, *p.* 39.)

It was also a rule of the common law that the principal and accessory might be indicted, and arraigned and tried together. But the accessory could not be arraigned and tried unless the principal had been previously tried and convicted, or unless they were arraigned and tried together.

It is contended, however, that the common law rule by which the accessory before the fact is subjected to the same punishment as the principal, has, so far as slaves are concerned, been repealed by the Revised Statutes.

To sustain this position, the 10th and 26th sections of the 1st article of the chapter on crimes and punishments are relied upon.

The 10th section is as follows: "In all felonies, accessories before the fact shall be liable to the same punishment as the principals, respectively, and may be prosecuted jointly with those principals, or severally, though their principals be not taken or tried."

The 26th section is as follows: "The provisions of this chapter shall not apply to slaves, except where slaves are specifically named, nor shall they apply to free negroes, when the punishment of a free negro for the same offense is provided for elsewhere in the Revised Statutes."

Now, the conclusion attempted to be deduced from these sections is, that as the 10th section provides that in all felonies accessories before the fact shall be liable to the same punishment as their principals, and the 26th section declares that the provisions contained in that chapter shall not apply to slaves, except where slaves are specifically named, and slaves are not specifically named in the 10th section, therefore the common law principle, so far as it is contained in that section, is repealed. This conclusion, however, is not authorized by a reasonable construction of the foregoing provisions, nor con-

sistent with the object and design of the legislature in their enactment.

The chapter in which these provisions are found was evidently intended to prescribe the punishment for offenses committed by white persons, and not by slaves; and, therefore, among the general provisions contained in its first article, it was deemed proper to declare that none of its provisions should apply to slaves, except where slaves were specifically named. The effect of this declaration is, that the punishment of slaves is to remain just as it would be if that chapter had not been enacted. None of its provisions in which slaves are not named apply to the punishment of slaves, nor change any rule of law in relation to their punishment. If it were to have the effect contended for, the consequence would be, that a rule of law then applicable to the punishment of slaves, would be repealed by a provision in which slaves are not named, thereby producing a result inconsistent with the declaration of the statute itself.

None of the provisions contained in this chapter in which slaves are not named apply to them, so as either to subject them to any punishment therein prescribed, or to exempt them from any punishment to which by law they were then liable. Their condition remains just the same it would have been if those provisions had not been adopted by the legislature. So far as slaves are concerned, they have no effect whatever, either in diminishing or increasing the punishment annexed by law to such offenses as are committed by them.

The common law rule, with respect to the punishment of accessories before the fact, is somewhat enlarged in its operation by the provisions of said 10th section. The rule, as thus enlarged by the statute, does not apply to slaves; but the rule itself, as it existed before the passage of the statute, does apply to them, and has not been repealed or modified, so far as they are concerned, by any of its provisions.

The question, however, still arises, did the legislature intend that a slave who is an accessory before the fact to the crime of administering poison to a person with the intention to destroy life, should, as well as his principal, suffer the penalty of death?

The 3d section of the 7th article, in the chapter on the subject of slaves, &c., already referred to, which prescribes the punishment for the commission of this offense, does not in terms apply to an accessory before the fact.

The first and fourth sections of the same article, which relate to the commission of other offenses by slaves, make the punishment therein prescribed apply as well to the accessory before the fact as to the principal. Now, the question is, for what purpose was this distinction made? Why, in a previous section in the same article, and also in one immediately succeeding, subject an accessory before the fact to the same punishment as his principal, and omit entirely to insert such a provision in the section under consideration? The omission must be presumed to have been intentional, inasmuch as it was deemed necessary, in order that the other sections should apply to accessories before the fact, to insert an express provision to that effect. Hence the inference is that the legislature only intended that accessories before the fact should be liable to the same punishment as their principals, in those cases where they were expressly declared to be thus liable. This deduction is fortified by the circumstance that the same article prescribes a punishment for an offense which, as we have already seen, embraces that with which the appellee is charged in the indictment in this case. And as this punishment is of an inferior grade to that which would be inflicted on the accused by the application of the common law rule, we have come to the conclusion that it is the only punishment to which he is liable. There is, we admit, some doubt concerning the legislative intention on the subject, but in such cases the doubt should always be resolved in favor of the accused. If this punishment be deemed inadequate to the offense, another punishment for such offenses can be prescribed by the proper department of the government.

As the court erred in sustaining the demurrer to the indictment, the question arises, can this court reverse the judgment for that error? By section 333 of the Criminal Code, it is declared that a judgment in favor of the defendant, which operates as a bar to a future prosecution for the offense, shall

not be reversed by the court of appeals. The inquiry, therefore, is, does the judgment in this case operate as a bar to a future prosecution for the offense of which the defendant is alleged to be guilty, and for which he is liable to punishment under the statute?

If a demurrer to an indictment be sustained because the indictment contains matter which is a legal defense or bar to the indictment, the judgment shall be final, and the defendant discharged from any further prosecution for the offense. (*Sec.* 169, *Crim. Code.*)

But by section 170 it is declared that if the demurrer is sustained on any other grounds than those mentioned in the four preceding sections, the judgment shall not operate as a bar to a future prosecution. In this case the demurrer was not sustained on any of the grounds mentioned in either of said sections, and consequently the judgment is not of such a character as will operate as a bar to another prosecution for the offense, and may, therefore, be reversed by this court.

We would not, however, be understood as deciding that an erroneous judgment for the defendant, on a demurrer to an indictment, is such a judgment as will, in any case, preclude a reversal. All that we now decide is, that the judgment in this case is not of that description.

Wherefore, the judgment is reversed, and cause remanded, that the demurrer may be overruled, and for further proceedings not inconsistent with this opinion.