## KIMBALL vs. NOYES and another.

Where A enters into a written contract, not under seal, with B, to pay B's debt to C, C may maintain an action on the contract in his own name.

PAINE, J., was of the opinion that on a *bond* to pay the debts of the obligee, his creditors could maintain an action at law against the obligor; but the case did not require a decision of that question.

In such a case the creditors may at least obtain the benefit of the bond by a proceeding in equity.

N., K. & F. being partners, K. and F. sold their interest to N., and took a bond from him, with D. as surety, to pay the debts of the firm and indemnify K. and F. from all costs, damages, &c. One of the creditors of said firm subsequently obtained a judgment against it, and, execution being returned unsatisfied, brought an action against all the parties to the bond, praying that the obligees be required to assign the bond to him, and the obligors adjudged to pay said judgment, and that they "bring into court the amount thereof," &c. Judgment was rendered "that the plaintiff recover of [the obligors] the amount of," &c., (being the amount due on said judgment,) and that the action be dismissed as to the obligees without prejudice to the judgment previously rendered against them jointly with N. *Held*, that although it would have been more technically correct to have taken judgment for an assignment against the obligees, yet the dismissal of the action as to them, and the absence of any formal assignment, do not constitute sufficient ground for a reversal of the judgment.

There was nothing in the case to show that the other creditors named in the bond had not been paid. But even if they should have been made parties plaintiff, the objection, not having been taken by demurrer or answer, was waived.

APPEAL from the County Court of *Milwaukee* County.

The case is stated by the court. Judgment in the court below for the plaintiff, that he recover of *Noyes* and *Davis* the sum of, &c., and that the action be dismissed as to *Flertzheim* and *Kimball* without prejudice to the judgment previously recovered against them jointly with *Noyes*. *Noyes* and *Davis* appealed.

*Finches, Lynde & Miller*, for appellants:

1. Upon the record, as it stands, the "real parties in interest," who alone can sue on this bond, are *Kimball* and *Flertzheim*. The respondent shows no assignment of the bond to him; he shows no judgment, order or decree of any court substituting him, as a creditor, to the rights of *Kimball* and *Flertzheim*. He discontinues his suit as to them, and thus deprives the court of any power to subrogate him to their rights, even if he could be subrogated. His judgment in this action is a simple judgment for the payment of so much money. In short, the county court has given such a judgment in favor of the respondent, as it would have given *Kimball* or *Flertzheim*, had they or either of them paid the judgment and then brought suit upon the bond to recover the amount paid! And this too without any assignment, and without the judgment, order or decree of any court, allowing or permitting him to be subrogated. 2. This bond, *as to judgments*, is a mere bond of indemnity. There is no condition in it to pay judgments. A *debt* is one thing, a *judgment* is another and different thing. *Davis is a surety.* He is entitled to stand on the strict letter of his contract. He is not to have his liability extended by implication. If he signs a bond to pay a simple debt of principal and interest, it is not a bond to pay a judgment. The condition is, that if *Noyes* shall well and truly pay the claims mentioned in schedule A, *and the interest to grow due &c.*, and shall well and truly indemnify and save harmless from all *costs*, charges and expenses &c., then the bond to be void. The judgment entered against *Noyes* and *Davis*, the surety, includes the principal sum, interest *and costs*, and also the "costs" of the sheriff on execution. Now as to "costs," *Noyes* was only to "indemnify and save harmless." Neither *Kimball* nor *Flertzheim* could maintain an action against *Noyes* and *Davis*, to recover the full amount of the said judgment, without averring and proving that they had paid the full amount thereof, because the judgment being made up of "principal, interest *and*

*costs,*" it becomes a *mere indemnity.    Scott vs.    Tyler,* 14 Barb., 202 ; *Aberdeen vs. Blackmar,* 6 Hill, 324.    And the respondent could have no greater rights on the bond than *Kimball* and *Flertzheim.*    3.  *Kimball* and *Flertzheim* cannot be compelled to deliver up a bond of indemnity to the respondent.    They hold no property in connection with this bond ; they are liable, equally with *Noyes,* to pay all the debts mentioned in the schedule.    Suppose the respondent had, by the order of the court, an assignment of this bond : where are the other creditors ? What rights have they ?    This court has held  that a  creditor of a bank cannot bring  a  suit in  his  own  name against the stockholders, to recover the amount of a simple contract debt. Is this case any different in principle ?    Here are seventy parties having the same right as the respondent to bring  just the same kind of a suit that he has brought.    Under our statute (R. S., ch. 140, sec. 19), judgment must be entered for the *penalty* of the bond.    The penalty of this bond is $20,000.  There are at least seventy  different creditors named in  it, each of whom can bring suit, and judgment being entered for the penalty of the bond in each case, it would  amount to $1,400,000. But we think that only *one* judgment can  be  entered upon a *penal* bond.    And a judgment once entered for the  penalty is a *bar* to any other action on the  same  bond.    What then becomes of the rights of *Kimball* and *Flertzheim,* and the other creditors ?    They have no rights.    This argument seems conclusive that this kind of bond is not the subject of subrogation to any *one* of the creditors.    It should be sued for the  benefit of all, if it is sued by the order of a court.

*E. Mariner,* for respondent.


*By the Court,* PAINE, J.    *Noyes, Flertzheim* and *Kimball* composed a firm dealing in furniture.    They were indebted to the plaintiff and others.    *Flertzheim* and *Kimball* sold out their interest to *Noyes,* and he agreed to assume and pay certain debts of the firm, among others  that of the plaintiff, and to give se-

curity for such payment. He accordingly gave a bond with the defendant *Davis* as surety, conditioned for the payment of those debts and to save *Kimball* and *Flertzheim* harmless from all costs, damages &c.

This action was brought by the plaintiff originally against *Flertzheim* and *Kimball* as well as *Noyes* and *Davis*, the complaint averring the above facts, and that the plaintiff's debt had not been paid, and asking that *Kimball* and *Flertzheim* be compelled to assign the bond to the plaintiff, and that *Davis* and *Noyes* be adjudged to pay.

*Noyes* and *Davis* answered by a general denial, and the suit was dismissed as to *Flertzheim* and *Kimball*, without objection by the other defendants so far as the record shows.

The facts as found fully sustain the complaint; and although there are exceptions to the findings, yet as there is no bill of exceptions preserving the evidence, the only question here is, whether the facts found are sufficient to authorize the judgment for the plaintiff.

If, instead of being under seal, the promise of *Noyes* and *Davis* had been a simple contract, it is well settled that the plaintiff might have maintained assumpsit on it in his own name. *Arnold vs. Lyman*, 17 Mass., 403; *Carnegie vs. Morrison*, 2 Met., 401; *Brewer vs. Dyer*, 7 Cush., 340; *Hale vs. Boardman and others*, 27 Barb., 82; *Canal Co. vs. Bank*, 4 Denio, 98; *Bohanan vs. Pope*, 42 Maine, 96; *Bristow vs. Lane*, 21 Ill., 196.

In many of these cases the rule is extended in terms only to simple contracts. In others the language is general and would include any promise, though the cases in which it was used were upon simple contracts. But there are still other cases where it has been expressly intimated that the same rule does not prevail in respect to contracts under seal. *Union India Rubber Co. vs. Tomlinson*, 1 E. D. Smith, 374; *Montague vs. Smith*, 13 Mass., 404–5; *How vs. How*, 1 N. H., 51; *Hinkley vs. Fowler*, 15 Maine, 289. In most of these cases there is no

attempt to give any reason, and in none of them is there any satisfactory reason given for a distinction between sealed and unsealed contracts in this respect. On the contrary, the reason usually given is, that the third person, for whose benefit a sealed promise is made, cannot maintain an action on it because he is not a party to the contract. But that is the same objection that has always been made in cases of simple contracts. And it appears from the opinion in *Carnegie vs. Morrison*, 2 Met., 404–5, that after some vacillation, the rule has become established in England, that the objection is good in either case; and it seems obvious that it is good in both if good at all. For where A promises B upon a good consideration to pay C a sum of money, it seems clear that it is wholly immaterial whether it has a seal or not, so far as concerns the question whether it is a promise to C upon which he can sue in his own name. There is no sound reasoning by which it can be shown that he is a party to it sufficiently to sue on it before it has a seal, but not so afterwards. If it is an unsealed promise to him before, by the same reasoning it is a sealed promise to him afterwards. It follows that as the rule is fully established in this country, that such third party may sue directly on a simple contract for his benefit, the law, to be consistent, should allow the same on a contract under seal.

It has been held, that where a clause is inserted in a policy of insurance, issued to a mortgagor, that the loss, if any, should be payable to a mortgagee, the latter might sue on the policy in his own name without any assignment. *Keeler vs. Niagara Fire Insurance Co.*, decided by this court, 16 Wis., 523; *Ripley vs. The Astor Ins. Co.*, 17 How. Pr. R., 444. I can see no distinction in principle between those cases and the present. They were contracts under seal, and the circumstance that in them the liability was contingent is immaterial to this question.

Still the point is not determined by the court in this case, as it is unnecessary. For whether or not the plaintiff could

maintain an action at law on this bond in his own name, it is certain that he was beneficially interested in it, and might obtain the benefit of it by a proceeding in equity. This was stated in the early case of *Affly vs. Warde*, 1 Levinz, 235, which is relied on as one of the cases first establishing the rule that an action at law could not be sustained. This was a suit in equity, and the complaint was dismissed as to *Kimball* and *Flertzheim*, the obligees in the bond. If that was technically improper, as the appellants contend, it furnishes no good reason for reversing the judgment against them, which is the same relief the plaintiff would have been entitled to, if, as they claim should have been done, the other defendants had been first directed to assign the bond to the plaintiff. But we do not regard such a formal assignment as necessary in a court of equity, however the plaintiff's rights upon such an instrument may be held at law.

There is no validity in the objection that the other creditors whose debts were provided for by the bond, were not made parties as plaintiffs. There is nothing in the case to show that their debts had not been paid. But even if they had been proper parties, the objection, which could only have been taken by demurrer or answer, was not taken at all. See *Mutual Ins. Co. vs. Benson*, 5 Duer, 175.

The judgment is affirmed, with costs.