## W. S. TAYLOR *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 5—935.]

**Waiver of Right to Face Witnesses in Criminal Case.**

While one accused of crime has the constitutional right to face his accusers, if one of his own witnesses is absent but makes an

affidavit in favor of the defense and the defendant asks to have it read in evidence and the prosecutor agrees to permit it to save the necessity of a continuance, the defendant can not after conviction claim a reversal because of his right to face the witnesses.

### New Trial on Account of Conduct of Party.

Where the commonwealth's attorney makes improper statements in his argument to the jury, they should be objected to at the time; and where no objection is made, the defendant can not urge the error in order to secure a new trial.

APPEAL FROM MERCER CIRCUIT COURT.

May 15, 1884.

OPINION BY JUDGE PRYOR:

The theory advanced by counsel for the appellant, that the killing might have been prompted by a belief on the part of the accused that it was necessary to save his son-in-law from great bodily harm, was suggested in this court for the first time; and while it was the duty of the court below to instruct the jury as to the whole law of the case, it is plain that learned counsel would not have omitted to make such a defense if warranted by the facts proved. No instruction was asked on this branch of the case, and if it had been the court would no doubt have refused it. The deceased, according to the weight of the testimony, was unarmed and from the testimony for the accused was approaching his son-in-law with a Barlow knife or a like instrument, while the latter stood with a double-barrelled shotgun ready to shoot if occasion required it; and besides when the fatal shot was fired the deceased had turned from Rufus Taylor and the latter had taken his gun from his shoulder, seeing that there was no danger from the deceased. The deceased was shot in the back at a time when he was making no assault upon any one and when both the Taylors must have known there was no danger to be apprehended from him. Pistols, shotguns and brass knucks seem to have been in readiness by the Taylors for use on parties whose most dangerous weapon was a pocket knife, and from the proof it is even doubtful whether such a weapon was in the possession of or drawn by the deceased at any time during the difficulty.

Witnesses other than those who were companions and friends

of the deceased saw the brass knucks, and there can be no doubt as to their use by the accused during the fight, and after a careful consideration of the record we see nothing in the case that could justify the killing in defense of Rufus Taylor or in defense of the appellant. It was the killing in sudden heat and passion of the deceased, a drunken, boisterous and abusive man, upon slight provocation, and the instructions given are unobjectionable and present the entire law of the case. Rufus Taylor says that deceased when he stepped upon the porch looked as if he was going into the house and accused saw him coming and backed into the door. The right of the accused to defend himself and to use such means as seemed to him to be necessary for that purpose was embraced in the instructions given and in such a manner that the jury could not have been misled as to the law of the case. The only question for the jury to try was, Did the accused kill the deceased to save his own life or to prevent the infliction of great bodily harm upon him by the deceased, and the jury having passed on the facts under proper instructions the judgment of conviction must stand.

We perceive no error in permitting the witness to state what deceased had been doing on the day the shooting took place, that is, where he started from and his object in going. The effort to show that the deceased came to Cornishville to kill Taylor utterly failed for more than one reason. In the first place he had no weapon on his person. He had every opportunity to have taken Taylor's life if he had desired to do so before he was killed by Taylor. Lastly, his whole conduct, connected with everything that transpired, refutes such a conclusion. Taylor was a justice of the peace, and when finding these drunken men disturbing the peace of the village, instead of inflaming their passions by treating them to more whiskey, he should have had them arrested, or taken other measures than the use of brass knucks and the pistol to quell the disturbance.

The fact that Davenport, a witness for the commonwealth, was asked if he had not made statements to the attorney for the commonwealth variant to those made on the witness stand did not prejudice the accused. This witness stated that Brown said he intended to kill Taylor, a fact he had not communicated to the at-

torney for the prosecution, and the witness adhered to the statement as true.

The witness, Deshager, was absent, and being a witness for the defense and his testimony sustaining the plea of self-defense, it was agreed at the instance of the accused that his statement as embodied in an affidavit might be read as evidence. It was read, and the point now made is that it was the constitutional right of the accused to confront the witness, and have him in person before the jury to testify as to the truth of the facts about which his statements were made. This was the witness for the accused whose absence necessitated the agreement entered into by the accused and whose testimony was introduced for the purpose alone of establishing his innocence, and therefore we perceive no reason for denying the accused the right to waive the presence of his own witness in order that he might have his trial. Such a waiver is for the protection of the accused, and although he can not be compelled to go to trial where the witness is within the jurisdiction of the court without the presence of the witness without his consent, still where the accused on his own motion is willing to have the statement of his own witness read in his behalf there can be no valid objection to it, but on the contrary such a favor when granted by the prosecution must result beneficially to the accused, in placing before the jury every fact essential to his defense.

It often happens that a material witness is about to leave the state or go where the process of the court is powerless to reach him, or is unable to attend court, and in such cases the accused may take the deposition of the witness to be read on the trial as provided by Crim. Code 1876, § 153. Without such a provision the accused would be compelled to go to trial without the testimony of the witness for the defense, or, if not allowed to take the deposition, the death of the witness being apprehended, the accused might be deprived of the testimony most essential to his defense, and a conviction be had because the accused was without power to waive his constitutional right. To permit the deposition to be read in behalf of the accused, and then to reverse the judgment of conviction upon the ground that the presence of his witness was indispensable, would be a mockery of justice and result at once in establishing a rule that would prevent any defense by the

accused, however meritorious, unless his witness is present in person to testify to the facts relied on.

The accused can not be compelled to go into trial upon an admission by the prosecution as to the existence of the facts relied on as a defense, but when the accused proposes to read a deposition in his own behalf, or a statement of facts evidencing his innocence of the crime charged, it is not such a waiver of a constitutional right as would preclude the court from pronouncing a judgment of conviction upon a verdict of guilty. Whether the accused can waive the right of confronting the witness against him is not necessary to the determination of the questions raised in this case. See *Hill v. State,* 17 Wis. 695, 86 Am. Dec. 736; *Wilson v. State,* 2 Ohio St. 319; *McCorkle v. State,* 14 Ind. 39; *State v. Wamire,* 16 Ind. 357; *State v. Reckards,* 21 Minn. 47; *Lynch v. Commonwealth,* 88 Pa. St. 189, 32 Am. Rep. 445; *United States v. Santos,* 5 Blatchford (U. S.) 104.

The argument of the attorney for the commonwealth in closing the case to the effect that Sesharger had not been sworn, and his testimony amounted to but little, while improper, could not have affected the verdict; and besides, no effort was made at the time to check his statements or the court appealed to for that purpose. There are other objections urged not necessary to be considered, further than to allude to the points raised. Some one in the crowd cries out that he is cut with a knife, "Lord have mercy, he has stuck a knife in me." Who this was does not appear, but it was spoken during the trouble and by those perhaps who were onlookers, but how this prejudiced the accused we are unable to perceive. Witnesses upon the record state that both the accused and the deceased were peaceable, quiet men; but the unfortunate killing of the one by the other and the facts transpiring at the time evidence an utter disregard of law and order on the part of both, and we see nothing in the record to palliate the conduct of either or to mitigate the punishment of the accused for taking the life of Brown. We feel constrained therefore to *affirm* the judgment below.

*P. B. Thompson, Sr., for appellant.*

*Bell & Wilson, P. W. Hardin, for appellee.*