## JOHN HANSEE *vs.* MARGARET DE WITT.

The obligation of a married women, except in the cases where her separate property is involved, is void.

A married woman is not liable upon a promissory note signed by her as surety for another, or upon one given in renewal thereof; although she has a separate estate; where there is nothing to show a charge, or an intent to charge such estate, or that her estate was benefited, and no evidence (except by implication) to show that the note was given upon the credit of such estate.

THIS action was brought to recover the amount of a promissory note, executed and delivered by the defendant to the plaintiff.

The complaint alleged that the defendant was a married woman, the wife of Richard C. De Witt, and was, on the 12th day of November, 1867, the owner of a farm of land, and was carrying on business on her sole and separate account, in the town of Neversink, and as a part of her said business she executed and delivered to the plaintiff, on the said 12th day of November, 1867, her promissory note in writing, of which the following is a copy :

"Ellenville, Nov. 12th, 1867.

$571-$\frac{97}{100}$. Three months after date, I promise to pay to the order of John Hansee five hundred and seventy-one 97-100 dollars, payable at the First National Bank of Ellenville, value received." (Signed by the defendant.)

The defendant, by her answer, admitted the giving of the note; and that she was a married woman, at the time of giving it; denied that it was given in relation to her separate estate, but alleged that she signed certain notes as surety for one Rhodes, for the purchase price of a pair of horses purchased by said Rhodes; that said horses were warranted; that the plaintiff purchased said notes, and afterwards there was a settlement of the matter; and that the note in this action was given for a less amount, to settle the matter and take up the former notes.

*A. J. Bude,* for the plaintiff.

*A. J. Parker,* for the defendant.

P. POTTER, J. The learned judge at the circuit ruled as a matter of law that the plaintiff was entitled to recover, and directed the jury to find a verdict for the amount of the note in question. In this ruling, and direction, with great deference, I think the learned judge erred. The note itself bears no evidence that the defendant charged, or intended to charge, her separate estate. And I think there was an entire absence of evidence, on the trial, that her separate estate was benefited by the consideration of this note; or, if there was evidence upon this point, then it became a question of fact for the jury, and the judge was in error in taking it from them. It did not help the plaintiff's case to prove, alone, that the defendant had a separate estate. Besides this fact, all that the plaintiff proved, having a tendency to show any benefit to the defendant, was his (the plaintiff's) own testimony, as fol-

lows: "I brought two notes against her, from Moses Wolf, who got them from the vendor of the horses; one for $300, the other for $200. I believe she told me it was for a team of horses; it was for a team of horses bought by her and Rhodes. She came to me and said she wanted me to pay the notes, and she and her son Caleb would give me new notes." This was not accepted. " She then let me have a note of $90, against N. C. Clark. We had some other deal, and I took a note of her for the balance. The last note ran along about four years, and was renewed.": (Which is the note in suit, diminished only by what she had paid on it before renewal.) After the plaintiff got the notes, he testifies: " She came to me to go and get the horses from Rhodes, as, she said, she supposed she should have to pay for them." In all this there is not a word showing a charge made by the defendant upon her separate estate, or that such estate was benefited; nor any circumstance, except an opinion expressed by this defendant—a married woman—that she supposed she would have to pay for the horses. No other witness was sworn for the plaintiff, and no case was made against the defendant; but there was no motion for a nonsuit.

The only witness sworn on the part of the defendant was herself; who testified that she signed the first notes as security for Jonathan Rhodes, and did not buy the horses for herself; that the note in question was a second renewal of the first note she gave the plaintiff, (which first note was for renewal, in part, of the note she so signed as security for Rhodes.) She also testified, " that she renewed the notes because the plaintiff said they were in the bank, and had to be paid, and it would make trouble if I did not." Upon her cross-examination, she also said that about a year after giving the first note to the plaintiff, " she took the horses from Rhodes, and that she took them because she considered she was liable to pay for them."

This presents all the material testimony in the case, and

in it no evidence appears, unless it be by implication, that the note was given upon the credit of her separate estate; none creating a charge upon it; none that her separate estate was benefited. Her opinion that she was legally liable to pay, and any action that was induced by the influence of that opinion, creates no liability. Not even the taking of the horses from Rhodes, afterwards, changed the nature of the contract with the plaintiff, or its consideration. The consideration of the note sued upon was the preceding note; and that, and those which preceded, until they came back to the note signed by her as the surety of Rhodes. There was no new or other consideration; and she being a married woman, her obligation (except in the cases where her separate property is involved) is void. This question has received so much consideration, recently, in the courts, that a discussion of the main point in the case is uncalled for. The legal incapacity of married women (except as to their separate estates, to charge them, or to create debts, or make contracts to benefit them,) is not now a question calling for the citation of authorities. The case before us is not brought within the exception. The burthen of showing this was on the plaintiff; he has failed to show it. The contract of a surety is *stricti juris*. But without invoking any technical rule, I think it is clear, upon well settled rules, that there was error at the trial, and the verdict should be set aside, and a new trial ordered; costs to abide the event.

PARKER, J., concurred.

MILLER, P. J., expressed no opinion.

New trial granted.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *Miller, P. Potter* and *Parker*, Justices.]