ANGELINE MAGUIRE *et al.*, Respondents, *v.* JOHN MAGUIRE *et al.*, Appellants.

### March 29, 1877.

1. A *nunc pro tunc* order extending the lien of a judgment to a married woman's separate estate, made after the lapse of several terms of court, and without notice to the opposite party, is illegal, and will be set aside in a proceeding instituted for that purpose.

2. Where there is a written contract, in order to bind the separate estate of a married woman it must appear from the contract itself that she intended that it should be bound. Such intent cannot be proved by oral testimony.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*W. V. N. Bay*, for appellants, cited : 2 Story's Eq. Jur., sec. 1400 ; 39 Ga. 41 ; 44 Ala. 338 ; 46 Miss. 114 ; Whitesides *v.* Cannon, 23 Mo. 457 ; Doe *v.* Perkins, 3 Durnf. &E. 749 ; Story's Eq. Pl., 8th ed., 402, sec. 428.

*Martin & Lackland*, for respondents, cited : Mann *v.* Schoer, 50 Mo. 306 ; Kimm *v.* Weippert, 46 Mo. 532 ; Emerson *v.* Whittlesey, 55 Mo. 254.

BAKEWELL, J., delivered the opinion of the court.

It appears from the pleadings and evidence that Angeline Maguire, the plaintiff, wife of defendant John Maguire, on May 1, 1858, owned a piece of land on the Bellefontaine Road, fronting 320 feet, by a depth, eastwardly to Ninth

Street, of 300 feet, which was held by trustees to her sole and separate use. On the date last mentioned she executed a note, together with her husband, to Oliver D. Filley for $8,000, payable three years after date, with interest at 10 per cent., payable annually. On the same day she executed a written instrument directed to her trustees, and authorizing them to execute a deed of trust to Filley for a portion of said tract of land fronting 125 feet on Bellefontaine Road; and on the same day she, together with her husband and her trustees, executed and delivered a deed of trust to Filley to secure said note, the property described in said trust being the southern 125 feet of the entire tract of 320 feet owned by Mrs. Maguire. This deed was acknowledged on May 17, 1858, and recorded next day.

On April 26, 1871, Mr. Filley commenced proceedings in the Circuit Court to subject the whole of the separate estate of Mrs. Maguire above described to the payment of this note. These proceedings were instituted against John Maguire and Mrs. Maguire and her trustees. The petition sets forth the execution of the note, and says that the money was borrowed by Mrs. Maguire and used by her for the improvement of her separate estate, and asks to have the whole tract of 320 feet subjected to the payment of the note and interest. Nothing is said about the deed of trust. The defendants were all personally served, one of the trustees receiving a copy of the writ. No answer was filed, except an answer of one trustee, who denies knowledge of all the material facts. On the trial all the defendants made default; and the decree, after finding all the other main facts as alleged in the petition, gives judgment against John Maguire for $22,800, to bear interest at 10 per cent., and finds that Angeline Maguire has a separate estate in the southern 125 feet of the tract of 320 feet, and directs that the southern 125 feet be sold to pay the judgment, unless it is satisfied, on demand, by her.

This decree was entered on October 30, 1872. On March

9, 1874, seven terms of the Circuit Court having intervened, on motion of plaintiff Filley, filed February 26, 1874, and without any notice to defendant Angeline Maguire, or her trustees, the original entry of judgment was amended, and a *nunc pro tunc* entry made extending the lien of the judgment over the whole tract of 320 feet owned by Mrs. Maguire, and directing its sale.

Of this entry of judgment Mrs. Maguire was entirely ignorant until June, 1874, when she at once commenced the present suit to set aside the *nunc pro tunc* entry and restore the original judgment.

On the trial Mrs. Maguire testified that the reason she did not appear and defend the original suit of Filley against her was that, shortly after the service of process, she called on Filley to inquire about it, and he then informed her that he brought suit merely to prevent his claim being barred by the statute of limitations; that she never saw the petition, and was surprised when she heard that judgment was rendered against her; that she had no notice of the *nunc pro tunc* entry; that she and her husband occupy separate apartments in the same house, and are not on speaking terms.

J. G. McClelland testified that he examined the title of Mrs. Maguire's property at her request, for a loan of $5,000, shortly before the *nunc pro tunc* entry, and found and reported the lien on 125 feet only.

Amos H. Shultz, brother of Angeline Maguire, and one of the trustees of her separate estate, swore that, prior to the entry of judgment against Mrs. Maguire, he had many conversations with Filley as to the suit, and understood him to say that he did not wish to disturb or annoy Mrs. Maguire; that he had brought suit to prevent the statute of limitations from barring his claim, and did not expect to take judgment against her. He seemed very friendly to Mrs. Maguire, spoke kindly of her, and said that he had tried to get her to sign a paper to prevent the statute from barring his claim, but she refused. After the judgment,

witness called upon Mr. Filley for an explanation, who told him that he desired to save himself from being barred of his lien on the property by the statute. Mr. Filley did not say what lien, and witness supposed he meant the lien of the deed of trust on the 125 feet. He knew of no other lien.

John Maguire, one of defendants, testified for defendants that the note was given for money loaned by Filley to his wife and himself to improve the real estate in controversy; that the whole sum, and $4,000 additional of the money of witness, went at once to improve the separate property of Mrs. Maguire outside of the 125 feet in the deed of trust; that the 125 feet is not worth more than one-third or one-fourth of Mr. Filley's debt. (Whether, by this, witness meant the original loan of $8,000, or the existing debt with accumulated interest, amounting to $22,000, does not appear.) Witness always understood that Mr. Filley's lien was on the whole tract. He joined with Mr. Filley in the desire to amend the decree as soon as he discovered what he considered a mere mistake of the clerk. Witness did not inform his wife of the intention to apply to amend the decree, though they lived in the same house. They are not on speaking terms. Mrs. Maguire refused to sign a paper intended simply to protect Mr. Filley from the effect of the statute. No part of the debt is paid.

Defendant O. D. Filley testified that he loaned the $8,000 to John Maguire and wife to enable them to improve the whole tract, and he always claimed the lien on the whole. Conversed several times with Mrs. Maguire and her brother, Shultz, about this case after he brought suit. Never told them he did not intend to take judgment. What he did say was that he did not wish or intend to trouble or annoy her by issuing an execution against her; that he wished to obtain a judgment so that the statute would not bar his claim. Had always been on friendly terms with Mr. and Mrs. Maguire — disposed to aid them. He supposed the original

decree embraced the 320 feet, and did not discover the mistake for some time.    Witness did not ask for a deed of trust, but it was made out and delivered to him, and he supposes he placed it on record.    His recollection is not, however, very clear about that.

This is a complete statement of all the evidence in the case.

On this testimony the court found for plaintiff, set aside the *nunc pro tunc* entry, and reinstated the original entry of judgment; and defendants appeal.

The *nunc pro tunc* entry was clearly illegal.    No such entry in a matter of such moment, made after the lapse of several terms and without notice to the defendant, could stand a moment before a direct attack, whatever might be its validity until steps were taken to avoid it.    *Mann* v. *Schroer*, 50 Mo. 306.

Independently of this purely subordinate question, however, it is quite clear that plaintiff had no right to the relief he asked in his original petition, and that the judgment as it stands now, and as it originally stood, is correct.

It is quite clear, from the written contract in this case, that Mrs. Maguire did not intend to bind her separate estate; and, this being so, there is an end of the matter, because, in order that a married woman may bind her separate estate, it is settled in Missouri, and everywhere else where our system of jurisprudence prevails, that, if there is a written contract, the intention to bind the separate estate must appear from the contract itself, and cannot be proved by oral testimony. The true meaning of the contract, justly interpreted, must be that the debt which it creates should be a charge upon the estate.    Now, this debt is made by its terms a charge, not upon the northern 195 feet of this tract of 320 feet owned by Mrs. Maguire, nor upon the entire tract, but expressly upon the southern 125 feet.    When she gave Filley an express lien upon A, it is quite clear that she did not mean in so doing to give him a lien upon B.  Equity will never raise an implied lien in the face of an express one; and even

a vendor's lien is waived by taking express security. 55 Mo. 254.

The principles involved in this case are so well settled, and it is so clear upon the facts, that it might be dismissed with a mere statement of the facts and affirmance of the judgment. But counsel for appellant tries to distinguish between this case and *Kimm* v. *Weippert*, 46 Mo. 532. He says that, in that case, it appeared in evidence that the plaintiff could not have relied upon any property except that in the deed of trust, since he swore he did not know that the married woman had any other separate estate; whilst, in the present case, plaintiff knew of the separate estate, and swears that he relied upon it. But the Supreme Court, in deciding the case of *Kimm* v. *Weippert*, says " that all such testimony should have been excluded ; that it was not competent to prove the intention by extraneous evidence *dehors* the written contract." We are, therefore, as did the court in that case, to arrive at our conclusion by throwing out of view the oral testimony, and deciding on the written instrument; and it is ruled in that case that a note signed by a woman jointly with her husband, and secured by deed of trust, will not create a charge on the separate estate of the wife, so as to render that estate liable for the residue of the debt in case the note was unpaid, for the reason that the true interpretation of the note and deed, taken together, shows that the only security intended to be pledged was the property described in the deed of trust. We had thought this question entirely at rest. The matter has been so fully discussed, and its doctrine, its history, and its reason so ably examined and explicitly declared by our Supreme Court, and especially by Judge Wagner, in the very interesting and learned decision above referred to, that it is merely wasting words to dwell upon it further.

The judgment of the Circuit Court is affirmed. All the judges concur.