### Houghton vs. Milburn and wife.

*January 11 — April 5, 1882.*

PRACTICE.  *(1) Motion virtually disposed of.*

CONTRACTS.  *(2:1) Covenant to maintain third person, construed.  (2:2) Moneys paid in consideration thereof, not a trust fund.  (2:3) Who may sue on such covenant.*

MARRIED WOMAN.  *(3) Joint covenant with her husband: separate estate.*

1. An order confirming a referee's report is in effect a denial of a motion to set the report aside.
2. An agreement between A. H. of the one part, and P. H., his wife, and the defendants of the other part, after reciting the permanent separation of A. H. and P. H., contains a covenant by A. H. with the second party that he will permit P. H. to reside in such place and family as she may from time to time choose; that he will, at the ensealing and delivery of said agreement, pay to defendants $1,000, "in full for the support and maintenance" of P. H., "for her sole use and benefit forever;" that not more of said sum than $125 shall be paid or expended by defendants to or for the use of P. H. in any one year, except in case of sickness, etc.; and that "all sums on hand and unexpended shall be kept on interest for the purpose of accumulating a capital for such use as is hereinbefore provided." The agreement then contains a covenant by the second party to "accept and take the said sum of $1,000 in full satisfaction for the said P. H.'s support and maintenance," and also a covenant by defendants to indemnify A. H. against all claims of P. H. for dower, etc., and against her debts. *Held,*

   (1) That P. H. (or her guardian for her, after his appointment) was at liberty, as against defendants, to select her place of residence, and defendants are bound to pay for her maintenance at such place to the extent provided in the agreement.

Houghton vs. Milburn and wife.

(2) That the defendants do not hold the $1,000 as a trust fund, chargeable only in equity, but are liable in an action *at law* upon their covenant for the maintenance of P. H.

(3) That under the well settled law of this state, such action upon defendants' covenant may be brought by any person who has furnished P. H. with maintenance, so far as the same was not furnished gratuitously.

3. Where a certain sum of money was paid to a husband and wife, and in consideration thereof they covenanted to support and maintain one X. during the remainder of her natural life: *Held*, that the wife's interest in the sum so paid is her separate estate, and she is liable upon the covenant as well as her husband.

APPEAL from the Circuit Court for *Trempealeau* County.

Aaron Houghton and Polly, his wife, having separated, and having mutually agreed that such separation should be permanent, an agreement under seal was entered into between Aaron, of the one part, and Polly and the defendants, of the other part, providing for the separate maintenance of Polly. The defendants are husband and wife. *Mrs. Milburn* is the daughter, and the plaintiff is the son, of Aaron and Polly. The agreement bears date May 29, 1875. It recites the separation of Aaron and Polly, and contains the following covenants: "Now, therefore, the said party of the first part, in consideration of the premises and in pursuance thereof, doth hereby covenant, promise and agree to and with the said *William Milburn* and *Caroline S. Milburn* and Polly Houghton, his wife, that he shall and will allow and permit his said wife to reside and be in such place or places, and in such family and families, as she may from time to time choose or think fit to do; and that he shall not, nor will at any time, sue, molest, disturb or trouble any person whomsoever for receiving, entertaining or harboring her. And that he will not claim or demand any of her jewels, money, plate, clothing, household goods or furniture, which the said Polly Houghton hath in her power, custody or possession, or which she shall or may at any time hereafter have, or which shall be delivered or given to her, or that she may otherwise acquire. And further, that the said

party of the first part shall, at or before the ensealing and de-
livery hereof, pay or cause to be paid to the said *William
Milburn* and *Caroline S. Milburn* the sum of $1,000, in full
for the support and maintenance of his wife, for her sole use
and benefit forever.   And that not more of the said sum than
$125 shall be paid, laid out or expended by the said *William
Milburn* and *Caroline S. Milburn* to or for the use of the
said Polly Houghton in any one year, unless it be in case of
sickness or other pressing necessity, in which case a sufficiency
may be used to relieve want and make her comfortable.   And
all sums on hand and unexpended shall be kept at interest for
the purpose of accumulating a capital for such use as is here-
inbefore provided.   And the said *William Milburn* and *Car-
oline S. Milburn* and Polly Houghton do hereby agree to
accept and take, and do hereby accept and take, the said sum
of $1,000 in full satisfaction for the said Polly Houghton's
support and maintenance, whether in sickness or in health."

The instrument contains covenants of the defendants to
idemnify Aaron Houghton against all claims of said Polly
Houghton, whether for dower or otherwise, and against her
debts.   In January, 1856, Aaron and Polly were, by the judg-
ment of the circuit court, duly divorced from the bonds of
matrimony.   The $1,000 mentioned in the above contract was
paid by Aaron to the defendants.   From the time said contract
was made until January, 1879, Mrs. Houghton resided portions
of the time with the defendants and portions of the time with
her other children, including the plaintiff.   She first went to
the defendants'· to reside in May, 1878.   Since January, 1879,
she has resided constantly with the plaintiff.   This action was
brought by the plaintiff against *William* and *Caroline S. Mil-
burn* to recover compensation for her maintenance during the
times she resided with the plaintiff.   The complaint states the
expenditures of the plaintiff for the maintenance of Mrs.
Houghton, and claims to recover the same under and by vir-
tue of the covenants in the aforesaid instrument.   The answer

of the defendants alleges that they accepted the $1,000, to be applied by them as trustees to the separate support of Mrs. Houghton, according to the conditions of such contract, and denies that they agreed to support her. The cause was tried before a referee, who in due time made and filed his report. The plaintiff moved the court to set aside the report, and the defendants moved for judgment upon it. The motions were argued together. The court made an order modifying the report in certain particulars, and confirming it as modified, and ordered judgment for the defendants. The plaintiff appealed from the judgment entered pursuant to such order. The grounds of the judgment are stated in the opinion.

For the appellant, there was a brief by *Button Brothers*, and oral argument by *W. F. Vilas*.

*Edwin White Moore*, for the respondents, argued, among other things, that the instrument providing for the separate maintenance of Polly Houghton bound the respondents simply as trustees of the fund therein mentioned and placed in their hands, and they could only be reached by an action in equity to require them to perform the duties of the trust as laid down in the instrument. The only engagements made therein by them were to indemnify Aaron Houghton against the debts of Polly Houghton, and to procure release of dower, etc., from her as desired by Aaron Houghton. This contract of the trustee to indemnify the husband against debts on account of the wife was long considered indispensable to the validity of a contract by the husband for the separate maintenance of the wife. It was supposed that a contract between the husband and wife directly, for such a purpose, would not be binding, and consequently a third person was introduced, with whom the husband contracted as trustee in behalf of the wife. In order to furnish a consideration from the trustee for the contract of the husband, he made this contract of indemnity. The third person is invariably spoken of as trustee, and the wife as *cestui que trust*. The instrument in this case is of similar

form, and for the same purpose as those referred to and used in England in all such cases. *Baynon v. Batley*, 8 Bing., 256; *Jee v. Thurlow*, 2 B. & C., 547; *Rolette v. Rolette*, 1 Pin., 370. It was afterwards held, however, that such trustee was not necessary to the validity of the contract, that the husband might contract directly with his wife for her separate support, and would in such case be regarded as trustee of the sum to be paid for the benefit of the wife, and that the trust thus created would be enforced in equity. Such a contract was, however, still exclusively the subject of equity jurisdiction. Cord's Legal & Eq. Rights of M. W., secs. 120–130; Story's Eq. Jur., sec. 1248; Reeve's Dom. Rel., 104; Tyler on Inf. & Cov., sec. 340. The agreement to indemnify Aaron Houghton can be of no avail to the appellant. He does not claim by any privity with Aaron Houghton, and all the liability claimed by him has been incurred since the divorce, which, of course, relieved Aaron Houghton from all liability for such debts. No action at law to charge the respondents personally can be maintained upon an account made with the *cestui que trust*. Even if the fund were liable for the debt, a valid claim, if not a judgment, against Polly Houghton must first be shown, and resort must then be had to a court of equity to have a portion of the fund applied to its payment. If the trustees were to be held liable individually to this creditor for a fixed sum independent of the amount of the fund in their hands, they might also be held liable to others, and so, instead of being simply held to a proper use of the money placed in their hands as trustees, they would become personally involved to an indefinite amount, while the funds held in trust would be wholly lost sight of.

The following opinion was filed February 7, 1882:

Lyon, J.    I. A question of practice will first be disposed of. The court did not, in express terms, deny plaintiff's motion to set aside the report of the referee; and it is claimed

that the omission is fatal to the judgment. *Fairbank v. Newton,* 46 Wis., 644, is cited to support this position. The precise point decided in that case is, that confirmation of the report of the referee must precede a judgment entered pursuant to such report, or the judgment cannot be upheld. In this case the report as modified was confirmed by the court. In substance and effect such confirmation was a denial of the motion to set the report aside. It was so held in *Lemke v. Daegling,* 52 Wis., 498. The cases are not distinguishable.

II. The judgment of the circuit court is based upon two propositions found by the court, to wit: *first,* that the defendants were ready and willing to furnish Mrs. Houghton suitable and proper maintenance at their home, and were not bound by their covenant to furnish it elsewhere; and *second,* that the expenses incurred by the plaintiff for the maintenance of his mother were incurred gratuitously. If either of these findings is correct, the judgment should not be disturbed.

1. The contract of May 29, 1875, fairly construed, we think, gives Mrs. Houghton the right to reside where she pleases, and to charge the defendants to the extent of $125 *per annum* for her maintenance, and in case of her sickness or other pressing necessity for a larger sum. By the terms of that instrument Aaron Houghton covenanted that his wife should have the right to choose her own residence at her pleasure, and no right is reserved therein to the defendants to control her in that behalf. In fact, according to the testimony of the defendant husband, Mrs. Houghton did not reside with the defendants for three years after the contract was made, but during that time resided with her other children, and the defendants paid for her maintenance during that time without objection on their part. This shows that they understood the contract as we think it should be interpreted. We conclude, therefore, that the first finding above stated cannot be sustained.

2. It appears that in 1878 the plaintiff was duly appointed guardian of the person of his mother; also that she is very aged and infirm. If her intellect is so enfeebled that she cannot make intelligent choice of her residence, it would seem that her guardian may choose for her. The proof is quite satisfactory that both herself and her guardian were desirous that she should live with the plaintiff; at least, from and after January, 1879, when she went there the last time.

There is sufficient evidence to support the finding that the plaintiff maintained Mrs. Houghton gratuitously up to January, 1879. The testimony is conflicting on the subject, and quite evenly balanced. In such a case the rule is that the finding must stand. But in respect to the plaintiff's expenditures in that behalf after January, 1879, there is no conflict in the testimony. The defendant husband admits in his testimony that in that month the plaintiff made claim upon the defendants for the maintenance of his mother at the rate of $125 per annum. There is no foundation, therefore, for the finding that the plaintiff supported her gratuitously, so far as the expenses of her maintenance after that date are concerned. To that extent the finding cannot be upheld.

III. It is argued by the learned counsel for the defendants that this action at law cannot be maintained by the plaintiff to recover for the support of Mrs. Houghton; that if he has any remedy, it is in equity only. The argument is founded upon the assumption that the $1,000 paid to the defendants by Aaron Houghton, pursuant to the contract of May 29, 1875, is a trust fund in their hands, of which Mrs. Houghton is the beneficiary; and that this action was brought to charge that fund.

Granting the soundness of the premises, there would be great force in the argument. But we do not think that the $1,000 is a trust fund in the hands of the defendants. They expressly accepted it in full satisfaction for the support and maintenance of Mrs. Houghton. There is nothing in the con-

tract that looks like a trust except the clause requiring the unexpended money to be kept on interest for the purpose of increasing the amount so paid to the defendants for the benefit of Mrs. Houghton. It is reasonable to believe that this clause was inserted as a security or guaranty that the fund should not be squandered, but that it and the accumulated interest should be safely kept for the, uses and purposes intended. Had the parties intended to create a trust, very different language would have been employed. We think the money belongs absolutely to the defendant. Had Mrs. Houghton died after the contract was made, and before the defendants had expended a dollar of it, neither Aaron Houghton nor the heirs of Mrs. Houghton could have recovered the money of the defendant. The money was paid absolutely and unconditionally to them, and it thereby became absolutely and unconditionally their money. The consideration for such payment was their agreement to support and maintain Mrs. Houghton. An action may be maintained in a proper case for a breach of such agreement, but not to charge the defendants as trustees in respect to the money paid them as the consideration for their agreement.

The rule is thoroughly established in this state and elsewhere, that when one person, for a valuable consideration, engages with another to pay money to or do any other act for the benefit of a third person, the latter may maintain an action against such promissor for a breach of his engagement. *Hodson v. Carter*, 3 Pin., 212; *Cotterill v. Stevens*, 10 Wis., 422; *Cook v. Barrett*, 15 Wis., 596; *Kimball v. Noyes*, 17 Wis., 695; *Putney v. Farnham*, 27 Wis., 187. This rule applies as well to covenants under seal as to simple contracts. *McDowell v. Laev*, 35 Wis., 171; *Bassett v. Hughes*, 43 Wis., 319.

The covenant of the defendants, contained in the instrument of May 29, 1875, is, in substance and legal effect, a covenant to pay to any person with whom Mrs. Houghton chooses to

reside, the expenses incurred by such person for her mainte-
nance, within the limitation of the contract, which is $125
*per annum*, unless, in case of her sickness or other pressing
necessity, more shall be required.   We think the plaintiff is
within the rule above stated in respect to the expenses in-
curred by him for her support after January, 1879, and may
maintain this action therefor.   Of course he cannot recover
expenses gratuitously incurred.   Neither can he recover more
than at the rate of $125 *per annum* unless he proves the facts
which, under the contract, justify and require a larger expen-
diture.   The testimony preserved in the bill of exceptions
does not satisfactorily show that such facts existed after Jan-
uary, 1879.

The referee found the aggregate amount of all the expenses
incurred by the plaintiff on account of his mother's mainte-
nance, but not of the portion thereof incurred after January,
1879.   We are unable to determine such portion from the
testimony.   A new trial must therefore be ordered.   This is a
controversy between a brother and a sister and her husband, over
the cost of the food which their aged mother eats, the garments
which she wears, and the medicines which her infirmities
require.   It banishes the daughter from her mother's presence
and society, and deprives the latter of those kindly offices
which a daughter can best bestow.   It plants the seeds of bitter-
ness and hate in the family, and banishes sympathy and love.
It is an unseemly controversy, and ought to be ended at once.
No doubt the parties regret that it exists, and would gladly
terminate it and resume their former pleasant fraternal rela-
tions.   We shall be pardoned for earnestly counselling them
to do so, and to that end to make mutual concessions, and, if
necessary, to avail themselves of the aid and advice of discreet
mutual friends.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause will be remanded for a new trial.

Upon a motion for a rehearing there were briefs, by *Button Brothers* for the appellant, and by *Edwin White Moore* for the respondents.

For the respondents it was argued that *Caroline S. Milburn* is and was a married woman and not liable on the contract. *Manhattan B. & M. Co. v. Thompson*, 58 N. Y., 80; *Robinson v. Rivers*, 9 Abb. Pr. (N. S.), 144; *Nash v. Mitchell*, 71 N. Y., 199; *McVey v. Cantrell*, 70 id., 297; *Huyler v. Atwood*, 26 N. J. Eq., 504; *Heath v. Van Cott*, 9 Wis., 516; *Yale v. Dederer*, 18 N. Y., 265; *Todd v. Lee*, 15 Wis., 368; Wells on Mar. Women, sec. 316; *Harshberger v. Alger*, 31 Gratt., 52 ; *O'Daily v. Morris*, 31 Ind., 111 ; *Bank v. Partee*, 99 U. S., 325; *Whitworth v. Carter*, 43 Miss., 61; *Barnum v. Young*, 10 Neb., 309; *Maguire v. Maguire*, 3 Mo. App., 458; *Hansee v. De Witt*, 63 Barb., 53; *Pippen v. Wesson*, 74 N. C., 437; *Stillwell v. Adams*, 29 Ark., 346; *West v. Laraway*, 28 Mich., 464; *Neef v. Redmon*, 12 Reporter, 434. This contract cannot be held to be for her benefit, nor has it any connection with her separate property. Being signed by husband and wife, it is the contract of the husband alone. *Shartzer v. Love*, 40 Cal., 93; *Swasey v. Antram*, 24 Ohio St., 87.

The motion was disposed of by the following opinion filed April 5, 1882:

LYON, J. The judgment in this action, for the defendants, was reversed as to both of them. The defendant *Caroline S.* now moves for a rehearing of the cause, on the ground that she was a married woman when the contract which is the basis of the judgment was entered into, and hence that she is not bound by it. This point was made in the brief of counsel for the defendants, but was not argued, and it was not noticed in the opinion reversing the judgment.

In *Dayton v. Walsh*, 47 Wis., 113, it was held that a married woman, having no separate estate, might purchase a farm of some person other than her husband, entirely on credit, and

the farm and proceeds thereof would constitute her separate property.

In *Conway v. Smith*, 13 Wis., 125, it was held that a married woman is liable in actions at law on her contracts relating to her separate estate, necessary or convenient to its enjoyment. By chapter 155, Laws of 1872, the earnings of a married woman, except for labor performed for her husband, are declared to be her separate property. R. S., p. 660, sec. 2343.

It was held in *Meyers v. Rahte*, 46 Wis., 655, that since the enactment of that statute a married woman may carry on business in her own name and for her own benefit, and may make valid contracts in respect thereto, which may be enforced at law in actions against her. See also *Krouskop v. Shontz*, 51 Wis., 204.

The principles of the above cases apply to this case. The one-half interest of *Mrs. Milburn* in the $1,000 which she and her husband received from her father for the future maintenance of her mother, constituted her separate estate, the same as a stock of goods, or a farm purchased by her on credit, would be separate estate. The money came from a source other than her husband; and it is not perceived how the circumstance that her husband had a joint interest with her in the money can affect her liability. Her interest in the money being her separate estate, it follows that an action at law may be maintained against her, jointly with her husband, on their covenant to support her mother. This action is based upon that covenant, and we hold that it may be maintained against her as well as against her husband.

*By the Court.*— The motion for a rehearing is denied.