Newman, J.
Plaintiff in error and defendants in error, the National Surety Company and The Fidelity & Deposit Company of Maryland, insist that the circuit court erred in holding that the unsecured bonding companies were entitled to an interest in the security held by the two secured companies.
Counsel filed elaborate briefs, most helpful to the court in reaching its conclusion. The principles of co-suretyship are ably and exhaustively considered and discussed, and the leading cases on the subject cited and analyzed.
Counsel for the unsecured bonding companies recognize the fact that each company executed a separate bond to the city of Cleveland and limited its liability, but submit that the execution of the separate obligations and the limitation in no way impaired the right of all the companies to share in the collateral held by two of them, They suggest that every test of the co-surety relation is present in this case—the bonds in question cover the same debt, are on behalf of the same debtor and the several bonds are dependent, the liability upon each being fixed by the aggregate of the bonds. The only right which is curtailed, they say, is the right of the obligee—the city of Cleveland—to recover the entire debt from any one surety; that all other rights, those so far as the obligee and the sureties are concerned and those among the several sureties, exist. They refer to the limitation of liability as a custom growing out of the change of conditions; that formerly all sureties were personal sureties and each was acquainted with the financial condition of the other and no restriction was *250 necessary, but, at the present time, when bonds are written by bonding companies whose financial standing is unknown to each other, it has become necessary, “as a matter of wise protection,” to restrict the amount of recovery. The reason for the limitation, so far as the rights of the parties here are concerned, seems wholly immaterial, and we might say in passing that the fact that the bonds in question are contracts of suretyship for hire, and not gratuitous, is wholly unimportant, as this is not a case for the construction of the language of bonds as between the bonding companies and the obligee, but one for the determination of the rights of the sureties among themselves, all of whom are paid sureties.
While admitting that there was a curtailment of one of the rights or incidents growing out of the relation of co-suretyship, yet counsel for the unsecured companies contend that the right to share in the collateral or securities given two of their number, being unaffected by any special agreement, stands unimpaired, and they seek to enforce that right in this action. They treat the proviso in the bonds limiting the liability of each company to that proportion of the entire loss which the penal sum mentioned in the bond bears to the total amount of the bonds and securities furnished by the depositary, namely, $300,000, as merely a contract arrangement between the companies and the obligee, and the arrangement effected was that all the companies standing together should assume the burden of the entire obligation, and not that each company should assume a separate and dis *251 tinct part of the obligation, independent of each other.
In this we think counsel are in error. The several bonding companies were not obligated to pay the same debt—they each agreed to pay an aliquot part—a fractional part of the total loss due to the default of the depositary. If one of these companies failed to pay its portion, such failure, in no way, affected the liability of the other companies. No duty, legal or equitable, was owing by one company to the other.
The form of bond executed by the several companies is set out in full in the statement of facts, and the language, we think, is plain and unequivocal and can bear but one construction.
The defendant in error, The Fidelity & Deposit Company of Maryland, executed its $54,000.00 bond at a time subsequent to the execution oí the eight original bonds, but, in our opinion, it bears the same relation to the original bonds as if it had been executed at the same time.
It is well settled that where one of two or more sureties for the same obligation has paid more than his share of the debt, he is entitled to contribution from his co-sureties to reimburse him for the excess paid over, his share in order to equalize the common burden.
Numerous authorities have been cited in support of this proposition, but it is to be observed that they speak of a common burden, and it is where parties are bound to discharge a common obligation that they are treated as co-sureties. It is uniformly held, as we understand it, that the re *252 lation of co-suretyship exists only where there is a right of contribution.
In the case under consideration, this right is wanting. Not one of the bonding companies was bound to equalize the loss with the others in case of default. When one company paid its portion of the loss—the portion fixed by its bond—no claim arose in its favor against any of the other companies and no further demand could be made against it. Its obligation was fully discharged and the liability terminated.
Our attention has been directed to many cases and we shall refer briefly to a few of them bearing upon the question under consideration.
The third proposition in the syllabus in Robinson v. Boyd, 60 Ohio St., 57, is as follows: “To give rise to the application of the doctrine of contribution between sureties, it is not necessary that there should be privity of contract between the parties, nor that the liability of each should have been incurred at the same time; all that is required is, that the debt or burthen should be common to the parties, and primarily that of the same person.”
In Hartwell v. Smith, 15 Ohio St., 203, the court say: “The other right to which we have referred, is that of contribution, which arises in the case of co-sureties, and which each may claim as against the others who are bound with him in a common liability. Whenever several sureties stand in the relation to each other of co-sureties, by being bound for the same person, and for the same debt or engagement, so that they have a common interest, or a common burden to bear, if one of *253 them be compelled to bear the whole or a part of the burden alone, he may call upon his co-sureties to equalize the burden by contribution.”
In B. & O. Rd. Co. v. Walker, 45 Ohio St., 588, the court quotes from 2 Wait’s Actions and Def., 288, as follows: “The doctrine of contribution rests upon the broad principle of justice, that where one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a ratable proportion. It depends rather upon principles of equity thán upon contract.”
It seems then that the test of co-suretyship is, as stated by counsel, common liability upon the same obligation. In the case at hand there was no common liability. Each surety, by its bond, obligated itself for a fixed portion of the debt. The authorities uniformly hold that the doctrine of contribution has its origin in the relation of co-sureties and is not founded upon the contract of suretyship; that it is an equity which springs up at the time the relation of co-sureties is entered into and ripens into a cause of action when one surety pays more than his portion of the debt. It equalizes burdens and recognizes and enforces the reasonable expectations of co-sureties, because it is just and right in good morals, and not because of any supposed promise between them. This equity having once arisen between co-sureties, this reasonable expectation that each will bear his share of the burden is, as it were, a vested right in each, and remains for his protection until *254 he is released of all his liability in excess of his •ratable share of the burden. Camp et al. v. Bostwick, 20 Ohio St., 346.
The court, in Russell v. Failor, 1 Ohio St., 327, say: “The right of contribution among sureties, is founded not in the contracts of suretyship, but is the result of a general equity which equalizes burdens and benefits.”
And again in Robinson v. Boyd, supra, the court says that the doctrine of contribution “is not founded on contract, but arises from the equitable consideration that persons subject to a common duty or debt, should contribute equally to the discharge of the duty or debt; and so where one performs the whole duty or pays the debt, or more than his aliquot part, each of the others should contribute to him, so as to equalize the discharge of what was a common burthen.”
The bonding companies in this case, did not obligate themselves to discharge the whole debt of the depositary in case of default, but an aliquot part thereof. There was no common burden to discharge. Therefore, there was no such thing as equalizing the discharge. There was no such thing as one of the sureties performing the duty of all the companies or the payment of the whole debt, but, to repeat, when one of the companies paid its portion, that was a termination of its liability, and no right arose in its favor against any of the other companies.
The case of Deering v. The Earl of Winchelsea, 2 Bos. & Pul., 270, an English case decided in 1787, seems to be the leading case on the doctrine of contribution among sureties. It is cited in sup *255 port of the holding of the circuit court. In this case the principal had entered into three bonds, each in the penalty of 4,000 pounds, with condition for the duly accounting of moneys coming into his hands as receiver. Deering, the plaintiff, had joined as surety in one of these bonds, and the defendants, the Earl of Winchelsea and one Rous, had each executed a bond with the principal.. The latter defaulted and there was owing the obligee approximately 3,883 pounds, an amount less than the penalty of each of the bonds. A .judgment in this amount having been obtained against Deering as one of the sureties, he filed a bill demanding contribution from the other parties who had signed the bonds. The real point in that case was whether there should be contribution by sureties on distinct obligations. The court held that they were bound as effectually quoad contribution as if bound in one instrument, with this difference only, that the sums in each instrument ascertain the proportions, whereas,' if they were all joined in the same engagement, they must all contribute equally, and the court uses this language: “In the particular case of sureties, it is admitted that one surety may compel another to contribute to the debt for which they are jointly bound. On what principle? Can it be because they are jointly bound? What if they are jointly and severally bound ? What if severally bound- by the same or different instruments ? In every one of those cases sureties have a common interest and a common burden.” The decree of the court was that the plaintiff and the two defendants should contribute in equal shares to the payment of the loss—each *256 should pay approximately 1,294 pounds. But in this case each surety was liable for the entire loss, provided the same did not exceed the penalty of the bond, while in the case at bar the securities were limited to a fixed proportion of the loss.
In the Deering case, in the event of default for less than 4,000 pounds, the failure of any one of the sureties to pay his share, would require the other sureties to pay more than they were equitably entitled to pay. In the case at bar, whatever the loss might be, no surety could be required to pay more than the proportion stipulated in the bond.
From our analysis of the Deering case, the. relation of co-stiretyship existed there because the burden was a common one, regardless of the fact that separate instruments were executed. “The bottom of contribution,” the court says, “is a fixed principle of justice, and is not founded in contract. Contract, indeed, may qualify it.”
Reference is made in the above case to Swain v. Wall, 1 Ch. Rep., 149, decided as early as 1642, where three sureties were bound for a principal, and agreed, if the principal failed, to pay their respective parts. Two of the sureties proved insolvent. The third paid the money, and one of the others becoming solvent, he was compelled to pay a third part, and not a moiety.
The Swain case is similar to the case at bar. In both cases the sureties bound themselves for a fixed portion of the debt only, and if the right of contribution did not arise in the former case, it does not exist in the case at bar.
We have examined and undertaken to analyze many of the cases cited, and counsel who challenge *257 the holding the circuit court have correctly, we think, placed the cases cited by opposing counsel in' two classes—one where sureties have become obligated for the same debt, but by different instruments, and the other where sureties obligated themselves for the same debt, but in stated and fixed amounts thereof, as where four sureties obligated themselves upon a general debt, which might reach $2,000. But each agreed, in the event of default, they would pay $500.00 thereof. In case of default for less than the entire amount, the failure of any one surety to pay his share would leave a larger burden upon the other sureties than they should, in equity, be compelled to bear. For example, if the entire default amounted to $500.00 only, each surety should, in equity, pay $125.00 thereof. Should all but one fail to pay their shares, the obligation of the full $500.00 would fall upon one surety.
But the case at bar does not fall within either of these two classes, because there is a limitation of liability by contract, and the nonpayment of the portion of loss covered by the bond of any other company does not affect such liability.
We conclude then that, each of the companies being liable for a fractional part only of the entire loss and none of them being entitled to any conr tribution from the others, there being no common burden, the circuit court erred in holding that the several bonding companies, including The Fidelity & Deposit Company of Maryland on its $54,000 bond, were co-sureties, and it follows that the unsecured bonding companies are not entitled to share in the collateral held by the two secured *258 companies, for, as expressed by counsel, the -shaN ing of indemnity , is • merely another method of enforcing contribution or making each pay ratably on the loss based on the same rule of equity that equality is equity—from such rights the sureties have divorced themselves by-contract. '• ;
- The circuit court found that there was due from The Assets Realization Company, plaintiff in error, in pursuance of its contract of purchase,, to the several surety companies . holding an assignment of the claim of the city of Cleveland, the sum of $57,068.02, with interest from June 11, 1909, and judgment was rendered against plaintiff in error in favor of each of the said surety companies in proportion to the amount of their respective bonds.
In arriving at this amount, the court found the claim of the city of Cleveland, as allowed, to be $153,336.04, a fifty per cent, dividend thereon amounting to $76,668.02; the funds in the hands of the assignee, The Cleveland Trust Company, on .the 11th day of June, 1909, was $19,600—the difference: between these two amounts being the amount, ordered to be paid. ■
Plaintiff in error excepts to this order, and one of its contentions is that the collateral in the hands of the National Surety .Company and The Fidelity & Deposit Company of Maryland should be applied to the claim of the city assigned to the surety companies in reduction of this claim and before the computation of dividends thereon. In support of this contention, our attention is called to the rule announced by -this court in thé cáse of State National Bank v. Esterly, 69 Ohio St., 24.
*259 At the time -of the failure of the depositary,- The Euclid Avenue Trust Company, there-,were in the hands of the city, of Cleveland certain- securities,, a part of the original $75,000 of securities,. Iwhich were reduced to money, the proceeds. ;of which •amounted to $21,025.95, and the same' were' pf;opr erly applied in .reduction of the city’s claim before presentation to the assignee for allowance—this /in accordance with the rule announced in the .Esterly •case. --i
The other collateral which the plaintiff in error would have applied in reduction of the city’s-claim was not in the hands of the city, but • was'held by the two secured companies. The city;-as.-we view it, had the right to present its. claim to the-assignee for allowance and could have collected from the assignee all dividends thereon ■ before' taking! .any step to enforce its claim on the several bonds, ,and we do not think that the rule in the Esterly - case is applicable to the- collateral in .'question,, and ,the circuit court was correct in making the order for the payment of a dividend on the amount of , the claim of the city, as allowed, without applying -the .collateral in the hands of the two companies in reduction thereof.
No question is or can be raised to the jurisdiction of the circuit court to determine the rights of the various parties interested in the collateral held by the two companies, but, plaintiff in error does challenge the right of that- court to fix the ...amount payable b}^ it on the, claim of the city. This, it contends, should be determined by the •court of insolvency. .It suggests, that-the,decision of the circuit court, as to the distribution and ap *260 plication of the collateral, would, no doubt, control the court .of insolvency in its orders as to the payment of dividends on the city’s claim, but it submits that it is important that the insolvency court retain its jurisdiction for the reason, it urges, that, if it does, the proper order as to the application of the collaterals and the payment of dividends would be maintained.
We do not think there is any merit in this contention and it cannot be adopted. Under its contract of purchase, plaintiff in error agreed to pay to the assignee of the depositary an amount sufficient to pay a dividend of fifty per cent, on the face amount of all allowed claims, and this, in effect, was an obligation to pay the assignee, for and on behalf of the bonding companies, the holders of the allowed claim of the city, and the other general creditors:—the contract was one for the benefit of these parties—and the bonding companies, as such beneficiaries, were in position to enforce their rights under this contract in this action, and this relief is sought by them in their pleadings. The cases cited by counsel—Touche v. Metropolitan Ry., etc., Co., L. R., 6 Ch., 671; Gandy v. Gandy, 30 Ch. Div., 57; Houghton v. Milburn, 54 Wis., 554, and Rothwell v. Skinker, 84 Mo. App., 169—seem to be authority for the rule which would give to beneficiaries, under a contract like the one in the case at bar, the right to recover thereunder.
Plaintiff in error was madé a party defendant in the common pleas court, and filed its answer and cross-petition setting up its interests' and *261 praying for general relief, and was a party to the appeal taken to the circuit court.
All the parties having an interest in the subject-matter were before the court, and, the court of insolvency having approved the contract of purchase, the circuit court had jurisdiction to make the order it did make against plaintiff in error and there is no reason, in our opinion, for remanding the case to the court of insolvency.
After applying the proceeds of the collateral held by the two secured companies in full indemnification of the loss sustained by them on their bonds, there will be an excess, and we are called upon to decide as to the disposition to be made of the same.
In arriving at a solution of this matter, it is important to keep in mind the proviso in the eight original bonds and in the $54,000 substitution bond of The Fidelity & Deposit Company of Maryland. The bonds are identical in form, differing only in the name of the company, the penalty and the date. The proviso in the bond of the American Bonding Company of Baltimore is as follows;
“Provided, however, and upon the following express conditions: First, That in the event of default on the part of the Principal herein, the surety shall only be liable hereunder for such proportion of the total loss thereby sustained by the obligee as the penalty of this bond shall bear to the total amount of bonds, namely, Three Hundred Thousand Dollars ($300,000), which said principal shall or should furnish in accordance with the provisions of the depositary ordinance of the city of *262 Cleveland:;* .and provided that the Surety shall not,, in any event, be liable for an amount in excess of fifteen ■ thousand dollars. Second, * *
The suretyship of each company was a separate transaction. ■ Each obligated itself to pay a fixed proportion • of the loss. In these bonds reference is ,had to the - fact that the city of Cleveland-awarded The Euclid Avenue Trust Company the custody of a certain portion of the public money, not to.exceed $250,000, subject to the provisions and requirements of law and the depositary ordinance ,pf the city of Cleveland, This ordinance required, the tendering of a good and sufficient bond,¡.issued by a surety cortipany, or the furnishing of good and sufficient security in the aggregate §um; of not,less than twenty per cent, in excess of this, $250,000, and it was to be presumed that the depositary would furnish bonds or securities, or both, .aggregating in amount the sum of $300,000. It was wholly immaterial, so far as the several companies executing the bonds were concerned, whether the balance of the $300,000 would consist of securities i or additional bonds, and none of these companies had reason for complaint whatever plan-the-depositary might see fit. to adopt.
■¡As if happened, it placed in the hands of the city of Cleveland’ $75,000 in securities. These securities were not placed there irrevocably set apart for. the payment of the debt owing to the city., j, They did not constitute a “trust fund.”: Under the ..provisions of the contract entered into between the city and the. depositary, the latter had the right to withdraw them and substitute in their place:Pthe'r securities,'or.to furnish'bonds therefor; *263 The depositary, exercising its right under this contract, withdrew from the custody ” of the city of Cleveland $54,000 of securities and substituted in their place the $54,000 bond of The Fidelity & Deposit Company of Maryland. This bond was accepted by the city and the city released all claim to the securities withdrawn. The depositary repossessed itself of these securities, converted the same into money and made a loan to The Avenue Apartment Company, secured by mortgage on its property. The city had no claim to or interest in this mortgage—the depositary had full' dominion over it. It placed it, as it had a right to do, in the hands of The Fidelity & Deposit Company of Maryland to indemnify it against any loss it might sustain on its $54,000 bond.
Counsel for plaintiffs below correctly state what was done in this connection and the effect thereof:
“It is incorrect to state that the municipal bonds deposited with the city were set aside by The Euclid Avenue Trust Company for the payment of its debt to the city. No property of The Euclid Avenue Trust Company was ever at any time irrevocably dedicated to the payment of this debt. But by the very terms of its contract with the city, it had the right to take down the property deposited with the city and put up in its stead a personal surety bond. It had the further right to do whatsoever it pleased with the municipal bonds which were for some time in the possession of the city. It did exercise its right to withdraw the bonds from the custody of the city, and in the exercise of its plenary power over those bonds it had the same sold and the proceeds thereof indirectly transferred *264 to The Fidelity & Deposit Company to indemnify that company against loss on its fifty-four thousand dollar bond. * * * The agreement by which the municipal bonds were originally deposited with the city provided that The Euclid Avenue Trust Company should have the right at any time to take down those bonds’ and substitute in its [their] place a surety bond, and it certainly seems reasonable to suggest that the rights which the various surety companies had in the municipal bonds deposited as collateral were such only as the city had, and that the city having granted to the depositary the right to substitute a surety bond, the other surety companies could not object thereto.”
Counsel for the National Surety Company, one of the secured companies fully indemnified under our ruling as to its collateral, and not being personally interested in the disposition of the surplus, suggest that, after that company and the other secured company are fully indemnified, the other bonding companies, under the doctrine of subrogation through the rights of a creditor, would be entitled to have such surplus or excess applied in reduction of the principal’s debt.
We recognize the rule that if a surety holds property of the principal as indemnity against loss by reason of his suretyship, the creditor may resort to such property and subject it to the payment of his debt, but a creditor can have no greater right in the property than the surety himself.
In Childs’ Suretyship and Guaranty, at page 276, it is laid down as a rule that a creditor is entitled to the benefit of any security given by the principal to the surety for the indemnity of the latter as to *265 the particular debt. In referring to this right, the author, on page 289, says: “We have been discussing, thus far, the right of a surety to be subrogated to the rights of the creditor. The creditor, after his claim is due, has a right of subrogation to securities held by the surety, provided they have, been given to the surety by the principal. * * * It is essential that the security be given for the identical indebtedness due; and the creditor cannot obtain any greater rights than those possessed by the surety.”
As we understand the rule then, the creditor, at most, is entitled to such benefit in the securities as the surety to whom the same are given would have. What is the result when the rule is applied to the collateral in the case at bar? The city of Cleveland, the creditor, if the two surety companies had not responded to their liability on their bonds, could have asserted in the collateral held by these two companies the same rights as could have been asserted by the companies themselves, and no more.
This collateral was placed by the depositary in the hands of these two companies, impressed with a pledge to the extent that the same might be required to indemnify them against loss under the liability on their bonds. Had the two surety companies not paid their proportion of the loss to the city, it would have had the right to resort to this collateral to that extent only, but the two companies did pay to the city all they obligated themselves to pay, and are entitled to so much of the collateral as may be required to indemnify them. This is the full measure of the rights of the holders *266 of this collateral, and when they exercise this right and apply the collateral to the extent that the same may be required to indemnify them, they have no further rights, of any kind or description, in the excess, and it follows that there are no rights to which subrogation can be had, either on the part of the city or the other bonding companies which paid their proportion of the debt. This collateral then having answered the purpose for which it was pledged, any surplus or excess would be the property of the pledgor—the depositary.
The' plaintiff in error, The Assets Realization Company, having purchased all the property of the depositary, would, therefore, be entitled to this ■surplus.
The two secured surety companies, the National Surety Company and The Fidelity & Deposit Company, on its $54,000 bond, are to be indemnified out of the collateral held by them, and there will be no loss to them on account of their suretyship. There was due from The Assets Realization Company, on account of the claim of the city of Cleveland, an amount sufficient for a dividend of fifty per cent. The unsecured companies alone, we think, are entitled to the benefit of this dividend of fifty per cent, on the face amount of the claim of the city of Cleveland, for the reason that they, having incurred a loss on account of their bonds growing out of the indebtedness, are entitled to avail themselves of all the rights the city had in this dividend.
It appears from the record, that there was paid to the National Surety Company on account of the amount paid by it to the city, the sum of $1,484.71, *267 out of the $19,600 in the hands Of the assignee at the time of the purchase of the assets by The Assets Realization Company. The Fidelity & Deposit Company was paid no part of this $19,600 on account of the amount paid by it to the city upon.its $54,000 bond, but the sum of $4,007.59 was retained by. the assignee for that purpose.
We are of the opinion that the amotint received by the National Surety Company and the amount retained by the assignee, as well as the sum of $57,068.02, and interest, the amount ordered to be paid by The Assets Realization Company,should be paid to the unsecured companies, including The Fidelity & Deposit Company of Maryland on its $25,000 bond, in proportion to the amount of their respective bonds.
The circuit court ordered the receiver appointed by it to sell the collateral and out of the proceeds to pay, first, the costs of the action, including a fee to counsel for plaintiffs below for services “rendered herein in behalf of all surety companies.”
It is not disclosed by ■ the record just what services were intended to be covered by this allowance, and we are not advised upon what theory the circuit court acted. Counsel to whom this allowance was made presume that the order was premised upon the conclusions at which the circuit court had arrived with respect to' the rights of the parties already determined by that court. They say that the two secured companies did wrong in withholding its collateral from those properly entitled to its benefit, and to right this wrong the plaintiffs below began the action for the benefit *268 of all parties in interest, prosecuted the suit to a successful conclusion through two courts and procured the benefit of the collateral, not simply for themselves, but for all others as well. This reason, if it were a reason, for an allowance does not exist under our ruling as to the collateral held by the two secured companies, and, no benefit having been derived therefrom through the efforts of counsel, an allowance of a counsel fee would be improper upon that theory.
If their claim is based, in part, upon the judgment obtained against The Assets Realization Company, we can see no reason for making the allowance on that account, because all the companies employed their own counsel and sought this same relief, and it cannot be said that this judgment was obtained entirely through the efforts of counsel for plaintiffs below, and there is no reason, as we see it, why the other companies should be compelled to contribute to the fee of counsel for plaintiffs.
We conclude then that the judgment of the circuit court should be modified in accordance with the views herein expressed, and it will be so ordered.

Judgment modiñed.

Johnson, Donahue, Wanamaker and Wilkin, JJ., concur.